IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| DENNIS HULL, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   Civil Action No. 5:10cv00135 |
| v. | ) |
| | )  By:  Michael F. Urbanski |
| MICHAEL J. ASTRUE, | )       United States District Court |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Dennis Hull ("Hull") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). Hull was insured for disability insurance purposes through June 30, 2008, meaning that he was required to establish that he was disabled on or before that date. See 42 U.S.C. § 423(a). In a decision dated February 18, 2010, the Administrative Law Judge ("ALJ") found Hull not to be disabled. In so doing, the ALJ noted that "there is no record of treating or examining physicians indicating that the claimant was disabled or even had limitations greater than those determined in this decision during the alleged period of disability." (Administrative Record, hereinafter "R." at 18.)

After the ALJ's decision, Hull submitted to the Appeals Council a Physical Residual Functional Capacity Questionnaire completed by his treating rheumatologist, Dr. M. Scott Hogenmiller, on April 12, 2010. The Appeals Council expressly considered Dr. Hogenmiller's report, but concluded that "there is no indication on the document that his opinion is offered

retrospectively to address the time period on or before your date last insured," and that "[t]his new information is about a later time." (R. 2.)

Hull argues on appeal that the Appeals Council improperly dismissed Dr. Hogenmiller's response to the questionnaire. Having reviewed the administrative record and considered the arguments of counsel, the court concludes that there is a reasonable possibility that the opinion of Dr. Hogenmiller would have changed the ALJ's decision. Several facts compel this conclusion. First, Hull suffers from a severe degenerative condition that was objectively documented in the medical record prior to his date last insured.[1] Second, based at least in part on this objective medical evidence,[2] Dr. Hogenmiller indicated that Hull cannot work. Third, the ALJ's decision notes the absence of any medical opinions indicating Hull was disabled. Fourth, the Appeals Council rejected the questionnaire completed by Dr. Hogenmiller, stating that "[t]his new information is about a later time." (R. 2.)

It is difficult to see how the Appeals Council could have reached this conclusion given Dr. Hogenmiller's reliance on Hull's May 15, 2008 MRI in his questionnaire. Given the degenerative nature of Hull's condition and Dr. Hogenmiller's reliance on the objective findings of an MRI dated May 15, 2008, the court cannot conclude that the Appeals Council's assumption that Dr. Hogenmiller's opinion was "about a later time" is supported by substantial evidence.

As such, this case must be **REMANDED** to the Commissioner for an evaluation by the ALJ of the opinion of Dr. Hogenmiller. On remand, the ALJ should contact Dr. Hogenmiller for a clarification of the onset date of his disability opinion. In particular, the ALJ should inquire from Dr. Hogenmiller as to the following: (1) Whether the opinion reflected in his April 12, 2010

---

[1] A May 15, 2008 MRI report finds "multilevel degenerative changes of the lumbar spine with disc space narrowing most evident at the levels of L3-L4. Degenerative changes are described at each individual level below." (R. 253.)

[2] Dr. Hogenmiller's questionnaire expressly refers to the May 2008 MRI. (R. 287.)

2

Physical Residual Functional Capacity Questionnaire reflects Hull's condition on the date of the questionnaire, April 12, 2010, or at an earlier period; and (2) Based on the degenerative nature and progression of Hull's condition, whether he can provide an opinion as to Hull's residual functional capacity on June 30, 2008, three months before he first saw him. Accordingly, the Commissioner's Motion for Summary Judgment (Dkt. # 24) is **DENIED**, and Hull's Motion for Summary Judgment (Dkt. # 19) is **GRANTED**.

**I.**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient

3

to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[3] considering the claimant's age, education, work

---

[3] RFC is a measurement of the most a claimant can do despite his or her limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after considering all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1529(a).

4

experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

**II.**

Hull was born in 1962 and was 47 years old at the time of the ALJ's decision. Hull has a high school education and has worked on his family farm in Highland County, Virginia his whole life. (R. 31.) Hull testified that he made hay, cut timber and tended cattle for more than twenty-five years until he became disabled by degenerative disc disease causing him radiating back pain and arthritis causing soreness and stiffness in his feet, ankles and hands. (R. 31-41.) Hull and his father testified at the administrative hearing that Hull could no longer do farm work, and that it has been done since the onset of his disability by his son, father and friends. (R. 31, 45.) Hull filed an application for benefits on June 9, 2008, claiming disability as of October 1, 2007 based on lower back pain, left leg problems and high blood pressure. (R. 118.) The Commissioner denied his application for benefits on August 13, 2008, and this decision was confirmed on reconsideration on December 29, 2008. (R. 57-61, 63-64.) An administrative hearing was held on November 13, 2009 before an ALJ. (R. 27-54.)

In a decision issued on February 18, 2010, the ALJ found that Hull had severe impairments consisting of degenerative disc disease and posterior tibial tendinitis in the right foot.[4] (R. 15.) Considering these impairments, the ALJ found that Hull retained the RFC to perform light work, except that he could never climb ropes or scaffolds and could only occasionally use ramps, climb stairs or ladders, balance, stoop, kneel, crouch, or crawl. (R. 16.) Based on this RFC, the ALJ determined that Hull could not perform his past relevant work as logger and farmer as those jobs fall in the heavy work category. (R. 18.) Relying on the

---

[4] The ALJ noted that Hull complained of a long history of psoriasis. Based on the treatment records, the ALJ determined that this condition was non-severe prior to the June 30, 2008 date last insured. (R. 15.)

5

testimony of a Vocational Expert ("VE"), the ALJ found that there are jobs that exist in significant numbers in the national economy that Hull can perform at the light exertional level, including food preparer, cashier, and retail salesman. (R. 19.) Accordingly, the ALJ concluded that Hull was not disabled under the Act between the alleged onset date of October 1, 2007 and the date last insured of June 30, 2008. (R. 20.) Hull requested review by the Appeals Council, and sent the Appeals Council a Physical Residual Functional Capacity Questionnaire completed by his treating rheumatologist, M. Scott Hogenmiller, M.D., dated April 12, 2010. The Appeals Council denied review on October 18, 2010, concluding that Dr. Hogenmiller's questionnaire did not provide a basis for changing the ALJ's decision, as follows:

> We also looked at Residual Functional Capacity Questionnaire completed by your treating physician, Scott Hogenmiller, M.D., who stated he first treated you on September 29, 2008 (20F). Moreover, Dr. Hogenmiller's opinion was completed on April 12, 2010, and there is no indication on the document that his opinion is offered retrospectively to address the time period on or before your date last insured. The Administrative Law Judge decided your case through June 30, 2008, the date you were last insured for disability benefits. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits.

(R. 1-5.) In the ensuing federal court appeal, Hull and the Commissioner each filed motions for summary judgment.

### III.

Hull's argument on appeal is directed at the decision of the Appeals Council to deny review in this case. This contention concerns the questionnaire completed by Hull's treating rheumatologist, Dr. Hogenmiller. Dr. Hogenmiller did not begin treating Hull until September 29, 2008, some three months after Hull's date last insured. Further, Dr. Hogenmiller did not complete an RFC assessment on Hull until April 12, 2010, some two months after the ALJ's

6

decision and more than eighteen months after Hull's date last insured. As the ALJ did not have Dr. Hogenmiller's questionnaire response at the time he penned his decision, Hull cannot find fault with the ALJ's recognition that the record contained no opinion from a treating or examining physician that Hull was disabled. Rather, Hull argues that the Appeals Council improperly dismissed Dr. Hogenmiller's opinion, focusing as it did on the date of Dr. Hogenmiller's completion of the questionnaire. Hull argues that such an assessment ignores the record evidence of Hull's back condition and that suggests that his condition "somehow went from non-existen[t] to severe" in the three month period between June 30, 2008, Hull's date last insured, and September 29, 2008, the date of Hull's first visit to Dr. Hogenmiller. Plaintiff's Brief in Support of Summary Judgment (Dkt. # 19), at 6.

When deciding whether to grant review, the Appeals Council must consider evidence submitted to it, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dept. of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc). Evidence is new if it is not duplicative or cumulative. Id. at 96. Evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Id. at 96. In this case, it is clear that the Hogenmiller questionnaire is both new and material.

In his questionnaire response, Dr. Hogenmiller diagnosed Hull with osteoarthritis, psoriasis, posterior tibular tendinitis, lumbar spondylosis and bilateral shoulder tendinitis. He indicated that Hull's prognosis was poor. Dr. Hogenmiller based his assessment on the following clinical findings and objective signs: (1) a May 2008 MRI indicating lumbar spine degenerative disc and joint disease; (2) an October 2008 x-ray showing bilateral bone spur formation in the ankles and left heel; and (3) "poor range of motion – shoulders, flexion at waist,

7

changes consistent with osteoarthritis of the hands." (R. 287.) Dr. Hogenmiller opined that Hull was not a malingerer and that his impairments were reasonably consistent with the symptoms and functional limitations described in his evaluation. (R. 287-88.) Dr. Hogenmiller stated that Hull's pain was severe enough to constantly interfere with his attention and concentration. (R. 288.) Dr. Hogenmiller stated that Hull was not capable of any physical stress, could sit or stand only 10-15 minutes at a time and less than two hours in an eight hour work day. Dr. Hogenmiller stated that Hull would need to walk around for ten minutes every ten to fifteen minutes during the workday, would need to shift positions at will and would need to take unscheduled breaks every ten to twenty minutes. (R. 289.) Dr. Hogenmiller stated that Hull could never carry any amount of weight or perform any postural maneuvers. (R. 289-90.) Finally, Dr. Hogenmiller stated that Hull had significant limitations with reaching, handling or fingering, able to perform these functions 0-10% of the time during the work day. (R. 290.)

Dr. Hogenmiller's April 12, 2010 questionnaire response is consistent with his physical examination and assessment of Hull when he first saw him on September 29, 2008. At that time, Dr. Hogenmiller noted on examination the following:

> There is decreased range of motion throughout multiple PIP and DIP joints in both hands really, though the greatest tenderness is in the right second PIP joint. There is also some tenderness throughout the MCP joints of the right hand. There is no tenderness through any of the joints of the left hand. It is difficult to assess the range of motion in his lower extremities due to back pain which occurs with these maneuvers, though I do believe that the range of motion is reduced in both knees.

(R. 259.)[5] Dr. Hogenmiller's assessment indicated that Hull had "substantial degenerative joint and degenerative disc disease throughout the lower lumbar spine. He does have some spinal

---

[5] PIP, DIP, and MCP are abbreviations for proximal interphalangeal, distal interphalangeal, and metacarpophalangeal, respectively. See http://medical-dictionary.thefreedictionary.com.

8

stenosis as well, in addition to some neural foraminal impingement." (R. 259.) The record contains notes from six visits by Hull to see Dr. Hogenmiller over the course of the next year. (R. 279-84.)[6]

The Appeals Council rejected the disability assessment in Dr. Hogenmiller's questionnaire, concluding that the information contained therein related to a "later time." (R. 2.) That conclusion, however, appears to be based solely on the date of Dr. Hogenmiller's questionnaire rather than an evaluation of the objective basis for his assessment or the character of Hull's degenerative condition. The Fourth Circuit Court of Appeals has held that "medical evaluations made subsequent to the expiration of a claimant's insured status are not automatically barred from consideration and may be relevant to prove a previous disability." Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987). Yet the Appeals Council appears to have applied just such an automatic bar in this case. The Appeals Council's mechanistic rejection of Dr. Hogenmiller's opinion based largely on the date it was written, without noting that the opinion was founded, at least in part, on objective medical evidence of Hull's degenerative condition obtained during the insured period, fails to discharge the Commissioner's duty to consider all relevant evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997); Jordan v. Califano, 582 F.2d 1333, 1335 (4th Cir. 1978).

Moreover, the Appeals Council's conclusion that Dr. Hogenmiller's opinion should not be given retroactive application appears to be little more than guesswork. Simply put, there is no way to know from the face of Dr. Hogenmiller's opinion whether it is intended to have retroactive application or not. The fact that Dr. Hogenmiller's assessment is based on objective MRI test results from May 2008 and the fact that Hull's condition is a degenerative one could

---

[6] The fact that Hull saw Dr. Hogenmiller several times provides some weight to Dr. Hogenmiller's opinion. Unfortunately, it is nearly impossible to decipher Dr. Hogenmiller's handwriting on these notes.

9

suggest that Dr. Hogenmiller intended his assessment to date back to 2008. On the other hand, the fact that the questionnaire is dated April 12, 2010 could suggest that the questionnaire reflects Dr. Hogenmiller's opinion only as of that date. Given the ambiguity in Dr. Hogenmiller's questionnaire response and his role as a treating specialist, the Commissioner should have taken steps to recontact Dr. Hogenmiller to clarify the time frame of his opinion. See 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical sources when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Substantial evidence requires the Commissioner to do more than guess as to the operative date of Dr. Hogenmiller's evaluation.

### IV.

As such, this case must be **REMANDED** to the Commissioner for an evaluation by the ALJ of the opinion of Dr. Hogenmiller. On remand, the ALJ should contact Dr. Hogenmiller for a clarification of the onset date of his disability opinion. In particular, the ALJ should inquire from Dr. Hogenmiller as to the following: (1) Whether the opinion reflected in his Physical Residual Functional Capacity Questionnaire reflects Hull's condition as of the date of the questionnaire, April 12, 2010, or at an earlier period; and (2) Based on the degenerative nature and progression of Hull's condition, whether he can provide an opinion as to Hull's residual functional capacity on June 30, 2008, three months before he first saw him. Because of the need for this additional evidence, this case must be **REMANDED**, requiring as well that the Commissioner's Motion for Summary Judgment (Dkt. # 24) be **DENIED**, and Hull's Motion for Summary Judgment (Dkt. # 19) be **GRANTED.**

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to counsel of record.

Entered: March 15, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

11

Case 5:10-cv-00135-MFU   Document 27   Filed 03/15/12   Page 11 of 11   Pageid#: 364